IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN HENDRICKS, | ) | CASE NO. 1:14 CV 1890 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| CUYAHOGA COUNTY | ) | |
| BOARD OF COMMISSIONERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Benjamin Hendricks filed the above-captioned action under 42 U.S.C. § 1983 against the Cuyahoga County Commissioners[1], Cuyahoga County Sheriff Frank Bova, Midwest Medical Staffing, Inc., Cuyahoga County Jail Director Kenneth Kochevar, Cuyahoga County Jail Warden Ronald L. Shobert, Midwest Medical Staffing Doctor or Nurse Jane Doe #1, Cuyahoga County Jail Corrections Officer John Doe #1, Midwest Medical Staffing Nurse Marie, Cuyahoga County Jail Corrections Officer Ortiz, Cuyahoga County Jail Corporal Boardman, Midwest Medical Staffing Nurse Marcus Harris, Cuyahoga County Jail Corrections Officer John Doe #2, Midwest Medical Staffing Nurse Judith, Cuyahoga County Jail Corporal Keyes, Midwest Medical Staffing Nurse John Doe #3, Midwest Medical Staffing Nurse Josie Spesak, and John/Jane Does x 20. In the

---

[1] On January 1, 2011, Cuyahoga County switched from a government administered by a Board of three County Commissioners to one that is administered by a County Executive and Council. The last meeting of the County Commissioners took place in December 2010. *See* http://bocc.cuyahogacounty.us

Complaint, Plaintiff alleges the Defendants did not provide him with proper medical treatment. He asserts claims for deliberate indifference to serious medical needs under the Eighth Amendment, negligence, negligent breach of duty, and intentional and negligent infliction of emotional distress. He seeks monetary damages.

Plaintiff also filed a Motion to Proceed *In Forma Pauperis*.[2] That Motion is granted.

### Factual and Procedural Background

Plaintiff was a prisoner in the Pickaway Correctional Institution in September 2013. He briefly was returned to the Cuyahoga County Jail for twenty days, beginning September 19, 2013, to correct part of his criminal sentence.

Plaintiff indicates he suffers from a number of medical conditions, including an unstable left shoulder, a parastomal hernia, a ventral hernia, a seizure disorder, "oxygen needs," and Crohn's disease. (ECF No. 1 at 5). He states that upon his arrival at the jail, he asked for assistance in "dressing out" due to his shoulder instability and was sent to the medical department. Doctor Jane Doe #1 discussed Plaintiff's medical conditions with him and told him that his medical records had been sent to the jail. She also informed him that he would not be receiving Humira for Crohn's disease while he was at the jail. He returned to the booking area. He alleges John Doe #1 refused to help him undress and belittled him. He further alleges Nurse Marie eventually rendered assistance but also ridiculed him in front of other inmates and staff.

Plaintiff claims he was sent to his cell with a half-full tank of oxygen. When that tank ran out of oxygen, he was provided with another tank. When the second tank was empty, Plaintiff summoned Officer Ortiz. He claims Ortiz told him he would have to wait because all of the medical

---

[2] Plaintiff notified this Court on December 29, 2014 that he was released from prison.

staff were currently assisting other inmates. He states Corporal Boardman came to his cell and told him to pack his belongings because he was being moved to a cell where his oxygen concentrator could be plugged in. Plaintiff claims he complained to Boardman that he was feeling light-headed but Boardman told him to "man up" because he was only moving to a cell across the hall. He contends he was not provided with a medical evaluation following the move to see if he was hypoxic.

On September 21, 2013, Plaintiff was denied assistance in removing his shirt and showering. Plaintiff claims he requested assistance and Nurse Harris came to his cell. Harris told him that medical department employees do not help grown men get dressed or shower. He was told he would have to do everything himself. He claims the stress from the situation gave him a headache, and he was given medication from the pill cart. He requested additional medication an hour later, but John Doe #2 refused to contact the medical department. He claims he spent the night with a headache, vomiting and a attending to a nose bleed.

On September 25, 2013, Plaintiff was experiencing abdominal cramps and bleeding from his ostomy and rectum. The officers on duty tried to contact the medical department and did not receive a response. He saw his attorney later that day. The attorney indicated he would ask the judge to return Plaintiff to prison and to conduct the hearing through video conferencing. Plaintiff agreed. Plaintiff complained to Corporal Keyes that the medical department would not help him dress. Keyes allegedly told Plaintiff to "man up" and do things on his own.

Plaintiff claims the abdominal cramps and nausea became very bad on September 29, 2013 and he sought treatment from the medical department. Nurse Judith allegedly told him there was nothing she could do for him. He indicates he also noticed his ostomy supplies needed to be

reordered. He reported to the medical department the following day complaining of symptoms. He was told he would not be given Humira while in jail.

Plaintiff went to the medical department on October 2, 2013, he was told he was out of ostomy supplies and that new ones would be ordered. He returned on October 5, 2013 and discovered they had not been ordered. Medical personnel taped a bag to his skin. The tape did not produce an adequate seal around his ostomy, resulting in leakage and skin irritation. He claims he was not able to shower because the medical department would not help him undress or shower. He contends he contracted a fungal skin infection.

Plaintiff alleges he attempted to remove his sling to bathe and felt his shoulder move. He claims Josie Spesak initially refused to help him until he "loudly expressed his displeasure." He was taken to the medical department where Spesak examined his shoulder and agreed that it was either dislocated or something in his prosthesis had shifted. She told Plaintiff he would have to be sent to Metro Health Medical Center because they performed the surgery on Plaintiff's shoulder and knew what the prosthesis should look like. Instead, he was taken to St. Vincent's Hospital. The doctors there determined his shoulder was not dislocated, but there may be a problem with the prosthesis. They recommended that he go to Metro Health Medical Center. Plaintiff, however, was not sent to Metro Health Medical Center because he was transferred back to prison four hours later.

Plaintiff asserts four causes of action. First, he claims Jane Doe #1, John Doe #1, Nurse Marie, Officer Ortiz, Corporal Boardman, Nurse Harris, John Doe #2, Nurse Judith, Corporal Keyes, John Doe #3, and Nurse Spesak were deliberately indifferent to his serious medical needs. He further claims Bova, Midwest Medical Staffing, Kochevar, and Shobert failed to adequately train and supervise their staff. Second, he claims the Defendants were negligent in finding qualified personnel

to provide medical services at the jail. Third, he claims the Defendants breached their duty to provide appropriate medical care to him. Finally, he claims the Defendants negligently or intentionally caused him emotional distress.

## Standard of Review

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## Discussion

Plaintiff's claims for deliberate indifference to serious medical needs arises under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, see *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); see *Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of

prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

It is clear from the foregoing that the duty to provide a certain level of health care to incarcerated offenders under the Eighth Amendment is a limited one. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, No. 03-2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)). To evaluate Plaintiff's claims pertaining to medical care, the Court must first determine whether his medical conditions were sufficiently serious to invoke Eighth Amendment protection. If these conditions are sufficiently serious, the Court will then proceed to inquire whether the Defendants exhibited deliberate indifference to each of these medical conditions.

A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that the prisoner required immediate medical attention that even a lay person would easily recognize the severity of the situation. *Harrison v. Ash*, 539 F.3d 510, 518 (6th

Cir. 2008). Whether a medical need is "obvious" does not depend on whether it was, in fact, obvious to anyone at the time; that issue goes to the subjective, rather than the objective, component of deliberate indifference. *Gunther v. Castineta*, No. 11–3627, 561 Fed.Appx. 497, 499 -500 (6th Cir. Apr. 2, 2014). Instead, the question is whether the average person would easily recognize, either from observing the person or being told of his symptoms, that the plaintiff's condition needed treatment. In other words, a medical need is obviously serious if the average person would deem it to be one that required immediate professional treatment. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

Under this standard, a line is drawn between the medical conditions or complaints which require medical treatment and those which present what are essentially options for the inmate in terms of seeking relief from symptoms. On one side of this line are conditions such as occasional indigestion or constipation, dandruff, acne, vitiligo, chapped lips, dry hands, most headaches, most colds (uncomplicated with fever), seasonal allergies, eczema, and muscle ache from exertion, which dictate "treatment" for cosmetic purposes or purposes of convenience or comfort. *See Peters v. Berghuis*, No. 1:09-cv-14, 2009 WL 261387 (W.D.Mich. Feb.3, 2009) (inmate's complaint that he found it hard to sleep because the lack of proper ventilation, dry air and dust in the unit caused him to suffer sinus headaches and congestion pressure was not "the sort of serious medical condition that would implicate the Eighth Amendment."); *Davidson v. Scully*, No. 81 Civ. 0390(PKL), 86012, 2001 WL 963965, at *5 (S.D.N.Y. Aug.22, 2001) (inmate's common seasonal allergies which caused headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, and nasal infections did not constitute serious medical need under the Eighth Amendment). On the other side of the line are serious medical needs which may be "life threatening or pose[s] a risk of needless pain or

lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). The state need not treat prisoners at a level that "exceeds what the average reasonable person would expect or avail [him]self of in life outside the prison walls." *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir. 1986).

Plaintiff complains of several ailments. He claims he experienced light-headedness as a result of an empty oxygen tank and was not examined by a doctor after he was moved to a cell where his oxygen concentrator could be plugged in. While the underlying condition requiring him to have supplemental oxygen is arguably sufficiently serious, there is no suggestion that he suffered any serious complications requiring medical attention from the brief period of time he was left with an empty tank before he was moved. He does not allege he had any other symptoms or that his symptoms continued once he was transferred to his new cell. He also claims he suffered a stress headache, which caused nausea and a nosebleed. He wanted additional medication to relieve these symptoms. A headache, temporary nausea and mild nosebleeds are not objectively serious medical conditions.

While Plaintiff's prosthetic shoulder displacement, and his Crohn's disease are arguably objectively serious conditions, Plaintiff fails to allege sufficient facts to suggest these Defendants were deliberately indifferent to his serious medical needs. If a plaintiff can demonstrate a serious medical need, he must then prove that the Defendants acted with a "sufficiently culpable state of mind" with respect to that need. A sufficiently culpable state of mind exists where the official in question subjectively perceived a risk of harm and then disregarded it. *Karnes*, 398 F.3d at 875. In particular, "a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id.* Accordingly, "when a prison doctor provides treatment, albeit

carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* To exhibit deliberate indifference, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Harrison*, 539 F.3d at 518.

Plaintiff claims several of the Defendants were deliberately indifferent to his serious medical needs because they were verbally insensitive to his requests for help. He claims John Doe #1 belittled him and would not help him undress. He alleges Nurse Marie belittled him as well, but eventually helped him change his clothing. He contends Corporal Boardman was verbally abusive when he told Plaintiff to pack his things to move to a cell that could provide him with concentrated oxygen. He claims he informed Boardman and Ortiz he was not feeling well, and they told him to "man up" because he was just going across the hall. He alleges he was told to "man up" and do things on his own by Corporal Keyes as well. He contends that Nurse Harris refused to help him undress or shower and told him he was a grown man and needed to learn to take care of himself. Verbal harassment and offensive comments do not state an Eighth Amendment claim. *Ivey*, 832 F.2d at 955.

Furthermore, the facts alleged by Plaintiff do not suggest that the Defendants actually perceived a risk of harm to Plaintiff if they refused to help him undress or shower. While the medical records he attaches to his pleading indicate he required assistance in 2008 with changing his ostomy bag while in the brace, the records do not state that Plaintiff could not dress himself or shower on his own. Plaintiff indicates that Harris called the correctional institution and was told Plaintiff did not get assistance with these basic tasks. Nurse Marie, although apparently skeptical,

-10-

did help Plaintiff change his clothes. To establish deliberate indifference and therefore a constitutional violation, Plaintiff must allege facts to suggest that these Defendants were not only aware of the facts from which an inference of serious harm could be drawn, but also that they made this inference of harm and refused to act. The allegations in the Complaint do not suggest John Doe #1, Nurse Marie, Corporal Boardman, Officer Ortiz, or Corporal Keyes perceived that Plaintiff could displace his shoulder and were deliberately indifferent to his serious medical needs.

Plaintiff also contends that John Doe #3, and Jane Doe #1 told him he would not be able to receive Humira, the medication he takes for Crohn's disease, at the jail. He does not include any other factual allegations suggesting why he could not receive the medication. He also claims Nurse Judith told him there was nothing she could do for his problems. Again, he provides no other information about this interaction. An Eighth Amendment claim is not asserted if a prisoner's complaint is directed at the wisdom or quality of the medical care he received in prison, even if that treatment is so negligent as to amount of medical malpractice. *See McFarland v. Austin*, No. 05-5105, 2006 WL 2572083, at *1 (6th Cir. Sept. 6, 2006); *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir. 1976);.*Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (simple negligence or inadvertent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain). Moreover, a prisoner's right is to medical care, not to the type or scope of medical care which he personally desires. *Hudson*, 503 U.S. 1, 9 (1992) (citing *Estelle v. Gamble*, 429 U.S. at 103-104). The Constitution does not guarantee a prisoner the treatment of his choice. *Ledoux*, 961 F.2d at 1537. Plaintiff's allegations against these Defendants, without more, suggest a difference of opinion on the course of medical treatment. Plaintiff does not suggest they acted with deliberate indifference.

Finally, Plaintiff claims the former Cuyahoga County Commissioners, Sheriff Bova, Jail Director Kenneth Kochevar, Jail Warden Ronald Shobert, and Midwest Medical Staffing, Inc, failed to properly train their employees. *Respondeat superior* is not a proper basis for liability under § 1983. *Leary v. Daeschner,* 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). The liability of supervisors cannot be based solely on the right to control employees, nor "simple awareness of employees' misconduct." *Leary,* 349 F.3d at 903; *Bellamy,* 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' " *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum, a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays,* 668 F.2d at 874).

It is clear in this case that these Defendants were included in this action solely because they employ or supervise other Defendants in this action. Plaintiff has not alleged any facts to suggest any of these individuals were aware of his medical conditions, or that they directed, authorized or knowingly approved of the actions of the other Defendants. This is particularly true in the case of the former County Commissioners, who held their last meeting in 2010, three years before Plaintiff claims he was denied appropriate medical care in the Cuyahoga County Jail. The claims against the former Cuyahoga County Commissioners, Sheriff Bova, Jail Director Kenneth Kochevar, Jail Warden Ronald Shobert, and Midwest Medical Staffing, Inc. are dismissed.

Plaintiff's remaining claims arise, if at all, under state law. Supplemental jurisdiction exists

whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.* Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear his state law claims.

### Conclusion

Accordingly, Plaintiff's Motion to Proceed *In forma Pauperis* is granted and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: February 17, 2015

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.